UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS PARKER, JR.,

        Plaintiff,

Case No. 1:10-cv-195

Hon. Robert J. Jonker

v.

DIAL EQUITIES, INC.,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action in which plaintiff has alleged that defendants engaged in race discrimination in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* This matter is now before the court on defendant's motion for summary judgment (docket no. 22). For the reasons stated below, defendant's motion is granted.

    **I.**    **Plaintiff's allegations**

    **A.**    **Title VII**

Plaintiff, Louis Parker, Jr., is an African-American man. Plaintiff alleged that he was dismissed from his position as a maintenance supervisor on August 21, 2007. Amend. Compl. at ¶ 7. In discharging plaintiff, defendant treated him differently from four other employees, i.e., Matt McMillen, Joe [Honeysett], James [Silvey] and Mike Malak. *Id.* Plaintiff later identified another employee, Matthew Everett. Plaintiff provided the following narrative in his complaint:

> James [Silvey], masturbating, report to Manager Deanneta Zimmerman also his work wasn't getting done over two year period of time. She came and removed pornographic books from shop. Joe [Honeysett], intoxicated over ten times on job - had over four verbal and three written warnings [.] Matt McMillen intoxicated while working  given verbal warning[.] I took pictures. Louis Parker Jr. used company credit card $118.00 paid back still fired 1st offence.

*Id.* at Factual Statement (parentheses omitted).

Plaintiff alleged that defendants violated Title VII because of his race. *Id.* at ¶ 9. Specifically, plaintiff alleged that defendants violated his civil rights by: terminating his employment; demoting him; denying him a promotion; and "other acts" which plaintiff described as "[d]emoted, from supervisor to ass. supervisor, and was more qualified." *Id.* at ¶ 8. Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") in September 2007. *Id.* at ¶ 10.

### B. Other claims

Defendants suggest that plaintiff's complaint could be broadly construed as raising claims under the Equal Pay Act, ("EPA"), 29 U.S.C. § 206(d) and Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and seek dismissal of any such claims. The court has a duty to read a pro se plaintiff's complaint indulgently. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F.2d 1220, 1223-24 (6th Cir. 1987). However, this duty does not require the court to conjure up unpled allegations and claims.[1] After reviewing the complaint, the court concludes that plaintiff has alleged only violations of Title VII. The complaint does not explicitly allege any claim under the EPA or the ADA.

---

[1] *See Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009) ("[C]ourts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Neither may the court 'conjure up unpled allegations,' *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir.1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975), because to hold otherwise would require the court 'to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.' *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).").

As an initial matter, plaintiff did not allege a violation of EPA. Indeed, he did not even complete the EPA claim section of the pre-printed complaint. Despite this failure to allege a claim under the EPA, the court notes that plaintiff's joint status report filed before the Rule 16 Conference states that the case involves "Claims of discrimination based upon race and claims of violation of the Equal Pay Act based upon race." Plaintiff's Joint Status Report (docket no. 11 at ¶ 5). Plaintiff did not amend his complaint to include this claim. Even if plaintiff had amended his complaint to reflect an EPA claim "based upon race," his claim would fail, because the EPA "concerns only discrimination based on sex, not race, age, or handicap." *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). *See also, Conti v. American Axle and Mfg., Inc.*, 326 Fed.Appx. 900, 913 (6th Cir. 2009) ("[t]he Equal Pay Act prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work"); *Snider v. Belvidere Township*, 216 F.3d 616, 619 (7th Cir. 2000) ("[t]he Equal Pay Act prohibits sex-based wage discrimination"); *Alexander v. Unified Solution*, No. 03-C-0157, 2006 WL 2105097 at *7 (E.D.Wis. July 26, 2006) ("the Equal Pay Act, which amended the Fair Labor Standards Act, prohibits only sex discrimination, not race discrimination").

With respect to any claim under the ADA, plaintiff testified at his deposition that he is not making a claim arising from a disability. Louis Parker Dep. at p. 111 (docket no. 24-1). Accordingly, the court does not construe plaintiff's action to include claims under either statute.

**II.     Legal standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

3

"Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.    Discussion**

**A.    Plaintiff's claim of demotion**

Defendant contends that while plaintiff's complaint alleged a Title VII claim based upon his demotion from maintenance supervisor to an assistant supervisor, he did not exhaust his administrative remedies with respect to this claim. "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Michigan Department of Corrections*, 250 F.3d 336, 342 (6th Cir. 2001). *See Weigel v. Baptist Hospital of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002) (a plaintiff's complaint filed in the district court must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination).

Plaintiff's September 14, 2007, EEOC complaint alleged that he was discharged on August 21, 2007 due to race discrimination in violation of Michigan's Elliott-Civil Rights Act and Title VII. *See* Charge of Discrimination (docket no. 1-2). The EEOC complaint alleged: that plaintiff was hired by defendant on November 11, 2005; that he worked at the property located at 200 Lake Forest Blvd in Kalamazoo; that he was discharged on August 21, 2007 "because of misuse of the company's credit card;" and that he is "aware of a White coworker who committed two terminable offenses on two separate occasions who was not discharged." *Id.* Pursuant to plaintiff's request, the EEOC issued a notice of right to sue ("RTS") on December 4, 2009. *Id.*

The only claim of discrimination within the scope of plaintiff's EEOC charge was that he was unlawfully terminated on August 21, 2007, for paying for his personal expenses with a company credit card. The EEOC charge does not allege that plaintiff was demoted prior to August

21, 2007, nor does it claim any relief related to an alleged demotion. Based on this record, plaintiff's claim regarding his alleged demotion is unexhausted. Accordingly, defendant is entitled to summary judgment on this claim.

### B. Plaintiff's claim of termination

### 1. Prima facie case of race discrimination

Plaintiff's complaint does not cite the specific section of Title VII upon which he relies in bringing his race discrimination claim. Rather, the complaint simply alleged that plaintiff was discharged because of his race. Compl. at ¶¶ 8.F. and 9.A. Given plaintiff's allegations, the court construes plaintiff's complaint as involving a "single motive" claim under Title VII's general anti-discrimination provision, 42 U.S.C. § 2000e-2(a)(1), which provides that it is an unlawful employment practice for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

§ 2000e-2(a)(1).[2] Because plaintiff has presented no direct evidence of race discrimination, his claim will be evaluated as one involving indirect evidence of discrimination.

In Title VII cases involving indirect evidence of employment discrimination, the Sixth Circuit utilizes a burden-shifting analysis as set forth in *McDonnell Douglas Corp. v. Green*,

---

[2] Allegations of discriminatory conduct fall into one of two categories: "single-motive claims, 'where an illegitimate reason motivated an employment decision,' or mixed-motive claims, 'where both legitimate and illegitimate reasons motivated the employer's decision.'" *Spees v. James Marine, Inc.*, 617 F.3d 380, 389-90 (6th Cir. 2010), quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396 (6th Cir.2008). The court notes that a different summary judgment standard would apply to a so-called "mixed-motive" discrimination claim under 42 U.S.C. § 2000e-2(m). *Spees*, 617 F.3d at 389-90. Such a claim, which is not present in this case, alleges that race, color, sex, or national origin was "a" motivating factor, rather than "the" motivating factor, in an adverse employment decision. *Id.*

6

411 U.S. 792 (1973).  *See Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 731 (6th Cir. 2000); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).  To establish a *prima facie* case of discrimination, plaintiff must demonstrate: (1) that he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was replaced by a member of an unprotected class or treated differently from similarly situated members of the unprotected class.  *McDonnell Douglas*, 411 U.S. 792; *Hoskins*, 227 F.3d at 731; *Mitchell*, 964 F.2d at 582; *Alexander v. Local 496, Laborers' International Union*, 177 F.3d 394, 402-03 (6th Cir. 1999).  Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's action.  *Grizzell v. City of Columbus Division of Police*, 461 F.3d 711, 719-20 (6th Cir. 2006).  If the defendant carries this burden, then the plaintiff must prove that the legitimate reasons offered by the defendant were in fact a pretext for discrimination.  *Id.* at 720.

> **2.    Plaintiff has failed to establish the fourth element of a prima facie case of race discrimination under Title VII**

The motion before the court hinges on whether plaintiff can satisfy the fourth element of the *McDonnell Douglas* test.  To establish this element, plaintiff must show that he was replaced by a member of an unprotected class or treated differently from similarly situated members of the unprotected class.  *McDonnell Douglas*, 411 U.S. 792.  Plaintiff has failed to meet the first prong of the fourth element of the *McDonnell Douglas* framework, because there is no evidence that he was replaced by a member of a non-protected class.  Plaintiff attempts to establish a prima facie case of discrimination by meeting the second prong of the fourth element, i.e., that he was treated differently from similarly situated members of the unprotected class.  *Id.*

"It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that these employees, i.e., the "comparables" or "comparators," are similarly-situated *in all respects*." *Mitchell*, 964 F2d at 583 (emphasis in original).

> [T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.* (citation omitted). In the disciplinary context, in order to find other employees to be similarly situated, the plaintiff and the comparable "must have engaged in acts of '*comparable seriousness*.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (emphasis in original), quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002).

Plaintiff has identified four "comparables" whom he contends were similarly situated: James Silvey; Joe Honeysett; Matthew Everett; and, Matt McMillan. However, the record reflects that none of these individuals were similarly situated to plaintiff because they were neither a full-time assistant supervisor nor engaged in acts of comparable seriousness.

### a.    None of the comparables were assistant supervisors

Plaintiff testified that he worked 40 to 60 hours per week, that he was originally the maintenance supervisor, and later demoted to assistant supervisor under Mike Malak. Parker Dep. at pp. 16-19, 37-38. Defendant's employment records reflect that plaintiff was employed by defendant from November 18, 2005 until his termination on August 21, 2007. Robinson Decl. at

¶ 3.b. (docket no. 24-3).[3] Plaintiff was promoted to the position of "lead maintenance" on a temporary basis beginning January 14, 2006, at which time his hourly rate of pay was increased from $15.00 per hour to $18.00 per hour. *Id.* Mike Malak was hired as the maintenance supervisor on February 12, 2007, with a salary at the rate of $16.00 per hour. *Id.* at ¶ 4.a. Malak's salary was increased to $17.00 per hour in May 2007. *Id.* When Malak was hired as maintenance supervisor, plaintiff was kept on as an assistant supervisor. Mike Malak Decl. at ¶ 2; Louis Parker Dep. at p. 16 (docket no. 24-1).

James Silvey was hired on or about June 1, 2005 as a "make ready" at an hourly rate of $9.50. Robinson Decl. at ¶ 8.a. In this position, Silvey would ensure that vacant apartments were clean, repaired and made ready for the next tenant. *Id.* Matthew Everett was employed on or about December 20, 2006 in a part-time position for snow removal at an hourly rate of $10.00. *Id.* at ¶¶ 7.a. and b. Joseph Honeysett was employed as a "maintenance tech" on or about March 27, 2006 at an hourly rate of $10.00. *Id.* at ¶ 6.a. Matt McMillen was employed on or about January 19, 2007 in a part-time position for snow removal at an hourly rate of $10.00. *Id.* at ¶ 5.a. In summary, these four employees were not similarly situated "comparables," because they were neither assistant supervisors nor paid at the rate of plaintiff. *See Quinn-Hunt v. Bennett Enterprises, Inc.*, 211 Fed. Appx. 452, 459 (6th Cir. 2006) (a supervisor is not similarly situated to non-supervisor); *Pierce v. Commonwealth Life Insurance Company*, 40 F.3d 796, 802 (6th Cir. 1994 (same). Moreover, unlike plaintiff, both Everett and McMillen were part-time employees.

---

[3] Suzanne Robinson, defendant's vice president of human resources, maintains the personnel files of its employees. Robinson Decl. at ¶¶ 1-2. Robinson prepared an affidavit setting forth the employment histories of plaintiff, the successor maintenance supervisor, Mike Malak, and the four comparable employees identified by plaintiff based upon her review of those personnel files.

### b. None of the comparables engaged in conduct of comparable seriousness

The record reflects that plaintiff used defendant's credit account at Lowes to purchase items totaling $118.68. Parker Dep. Exh. (docket no. 24-2 at p. 14). Plaintiff admitted that he used a company credit account to purchase a five gallon bucket of paint and other items in violation of company policy and that he knew these actions could result in the termination of his employment. Parker Dep. at pp. 51-53. Plaintiff testified that he bought the paint for "a client" who was not a resident at the apartment complex to perform a painting job as part of plaintiff's personal business, "Parker Painting & Maintenance." Parker Dep. at pp. 67-68, 85-86. Despite plaintiff's testimony that he purchased the paint for someone else, it is undisputed that he did not purchase the paint for defendant. Plaintiff admitted that he could be fired for his actions. *See id.* at p. 85 ("I committed a terminable offense. I was fully aware that I could be fired and I had no problem with that."). The fact that plaintiff could be fired for abusing the trust of his employer by misusing a line of credit is not surprising.

Despite plaintiff's violation of policy, defendant gave him an opportunity to repay the funds by August 14, 2007. Parker Dep. at p. 53. This agreement was memorialized in a document signed by plaintiff, Zimmerman and Malak on August 3, 2007. *See* Company Charge Account memo (docket no. 24-2 at p. 7). The agreement spelled out that the amount owed by plaintiff, $118.68, was to be paid in full by August 14, 2007, and that "[i]f expectations are not met according to the above listed expectations or within the appropriate timeframe, further disciplinary action, up to and including termination will be taken." *Id.* Plaintiff testified that he understood that he could have been terminated for failure to repay the funds by August 14th. Parker Dep. at p. 53. Nevertheless, plaintiff failed to repay the funds by that date. *Id.* The record reflects that plaintiff

obtained a money order on August 17, 2007, three days after the repayment date, payable to "Lake Forest apts" in the amount $118.68." Parker Dep. Exh. (docket no. 24-2 at p. 14). While it appears that plaintiff delivered the money order on April 17th, it is unclear from the record as to whether defendant negotiated the money order. *See* Zimmerman August 17, 2007 e-mail (docket no. 24-3 at pp. 5-6). Plaintiff was subsequently discharged on August 21, 2007. Parker Dep. at p. 53.

Plaintiff admits that none of the other comparables used defendant's credit card to purchase personal items. *Id.* at p. 85. Plaintiff appears to take the position that all of the comparables violated defendant's policy, but he was the only employee discharged for a violation. Plaintiff's position is not supported by the record. While it may be true that the comparables violated one or more aspects of defendant's policies, only one of them engaged in conduct of comparable seriousness. As discussed below, that comparable, James Silvey, was discharged.

In his affidavit, Mike Malak outlined the disciplinary action taken against Matthew Everett and Matt McMillan. Malak stated that the only claim against Matthew Everett was that Everett wore flip flops while working at the complex. Malak Decl. at ¶ 8. Everett was advised to put on shoes and socks for safety reasons. *Id.* The claim against Matt McMillan was that McMillen and two of his friends jumped into the complex's swimming pool after hours. *Id.* at ¶ 9. Malak reprimanded McMillen for this incident. *Id.*

Plaintiff alleged that Honeysett was intoxicated on the job, and testified that he had "written him up three times" for being intoxicated. Parker Dep. at p. 42. The record reflects that none of Honeysett's other supervisors or co-workers observed him intoxicated or acting intoxicated during working hours. Terence Goisier Aff. at ¶¶ 1-4 (co-worker) (docket no. 24-3); Leigh Basler (defendant's regional manager) Decl. at ¶ 5; Deanita Zimmerman (property manager of Lake Forest

11

Apartment Complex) Decl. at ¶ 12 (docket no. 24-3). In her declaration, Zimmerman talked to Honeysett once about allegations that he had been drinking on the job, which Honeysett denied and stated that it could be his mouthwash. Zimmerman Decl. at ¶ 12. Zimmerman received no other complaints or reports about Honeysett. *Id.* While there may be an issue of fact as to whether Honeysett was intoxicated on the job, there is no evidence that his alleged conduct was of comparable seriousness to plaintiff's actions (e.g., that Honeysett's alleged intoxication resulted in serious consequences such as an accident, personal injury or monetary loss to defendant).

The only defendant who engaged in conduct which was of comparable seriousness to plaintiff was James Silvey, who was discharged more than a year before plaintiff. While plaintiff complains that Silvey was not discharged for masturbating in the shop, defendant's records indicate that Silvey was later discharged for negotiating a private work order for a fee of $50.00 with a resident of the apartment complex. Robinson Decl. at ¶ 8.b. The negotiation and collection of this private "fee" was a violation of company policy, because it was charged for work which might otherwise have been done at no charge to the resident. Silvey Termination Letter (April 25, 2006) (docket no. 24-3 at pp. 30-31). If a fee was charged, the work would have been performed "on company time" and been billed by the office. *Id.* Defendant subsequently discharged Silvey for engaging in this conduct, which violated its "conflict of interest policy" (i.e., "Employees are not allowed to accept gifts, gratuities or favors that have a value greater than $25 or interfere with making independent and objective decisions regarding company matters"). *Id.*

In summary, plaintiff has failed to present evidence that any of the other employees engaged in misconduct of comparable seriousness to his improper use of defendant's credit account. Rather, it appears from the record that Everett wore flip-flops and was asked to change his shoes;

McMillen was reprimanded for using the pool after hours; and Honeysett was confronted about allegations of working while intoxicated. The only comparable who was engaged in conduct approaching the seriousness of plaintiff's abuse of trust was Silvey, who improperly charged a tenant $50.00 for performing maintenance work. As a result of his actions, Silvey was discharged like plaintiff.

### IV.  Recommendation

For these reasons, I respectfully recommend that defendant's motion for summary judgment (docket no. 22) be **GRANTED** and that this case be dismissed.

Dated:  June 14, 2011                                /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).